ORIGINAL

ORDERED SEALED BY COURT

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MARCO CORRADO (1), <br> aka Marcos, <br> RUBEN SANTOS (2), <br><br> Defendants. | Magistrate Case No. '08 MJ 1755 <br><br> COMPLAINT FOR VIOLATION OF: <br><br> Title 21, United States Code, Sections 846 and 841(a)(1) - Conspiracy to Distribute Methamphetamine; Title 18 United States Code, Section 2 - Aiding and Abetting |

The undersigned complainant being duly sworn states:

Beginning at a date unknown and continuing up to and including April 23, 2007, within the Southern District of California, and elsewhere, defendants MARCO CORRADO, aka Marcos, and RUBEN SANTOS did knowingly and intentionally conspire with each other, and other persons known and unknown, to distribute 50 grams and more of methamphetamine (actual), a Schedule II Controlled Substance; in violation of Title 21 United States Code, Sections 846 and 841(a)(1), and Title 18, United States Code, Section 2.

And the complainant states that this complaint is based on the attached affidavit, incorporated herein by reference.

_____
Signature of Complainant

Sworn to before me and subscribed in my presence this 4th day of June, 2008.

SEALED by Order of
Magistrate Judge Leo S. Papas
Date ___JUN 4 2008___

_____
HON. LEO S. PAPAS
UNITED STATES MAGISTRATE JUDGE

## A F F I D A V I T

ASIANO B. DAVILA, being duly sworn, states:

I am a Special Agent with the Federal Bureau of Investigation ("FBI"). The following is based on my own investigation, oral and written reports by other law enforcement officers, physical and electronic surveillance, interviews, subpoenaed and public records, database checks, searches, phone analysis, and other investigation. Since this affidavit is for a limited purpose, I have not included every fact I know about this investigation. I set forth only facts necessary to establish foundation for the complaint. Conversations below are set forth in substance unless noted, and most call descriptions are based on summaries prepared by monitors, not final transcripts. My interpretations of certain statements are set forth in brackets. Dates and times are approximate.

This complaint arises out of a half-pound methamphetamine deal involving a FBI confidential informant, with ties to the Mexican Mafia prison gang, and defendants Marco "Marcos" Corrado and Ruben Santos. The methamphetamine deal occurred on April 23, 2007. Corrado is a Shelltown gang member and a high-level Mexican Mafia prison gang associate who operates in San Diego under the authority of Mexican Mafia member Raul "Huero Sherm" Leon. Santos is also a Shelltown gang member and Mexican Mafia associate with close ties to Mexican Mafia member Richard Buchanan. The portions of the transaction that occurred in the informant's apartment were audio and video recorded.

On April 23, 2007, at approximately 1:49 p.m., defendant Corrado and the informant discussed the purchase of a quarter pound (4 ounces) of methamphetamine at the informant's apartment. At approximately 2:24 p.m., Corrado exited the informant's residence and met with defendant Santos at a car wash in National City, California.

At approximately 2:10 p.m., in a recorded call, the informant spoke to another individual. The individual asked the informant to bring the individual "two" [ounces of methamphetamine] at the individual's location because the individual had the money for the drugs. The informant told the individual that he was "waiting on the dude" who had the drugs, and that the informant wanted the individual to deal with the "dude" himself. The two then agreed to meet at approximately 4 p.m.. Approximately 15 minutes later, the informant called the indidivual and informed the individual that the source for the drugs wanted to sell at least a half pound of methamphetamine. The informant stated that he had $2750 for a quarter pound, and asked if the individual would also get a "q [quarter pound]." The two then discussed the price of the drugs and the informant confirmed that the price would be "48 [$4,800] for half of one [a half pound of methamphetamine]."

1

At approximately 4 p.m., Corrado called the informant, and asked the informant if the informant had the money to purchase the methamphetamine. The informant responded that the informant had the money and would call the other individual and tell the individual to bring his money for the drugs. At approximately 4:11 p.m., Corrado returned to the informant's residence. At approximately 4:35 p.m., Corrado received a phone call, and prepared to go meet with the other individual. The informant gave Corrado $2750 (in government funds) for the purchase of methamphetamine, and Corrado departed the informant's residence. At approximately 4:55 p.m., Corrado met with two males at an In and Out Burger restaurant on 24th Street in National City. The two males then drove to the informant's residence to wait for Corrado to return with 4 ounces of methamphetamine for the informant, and 4 ounces of methamphetamine for the two males.

At approximately 5:10 p.m., Corrado drove to a location in San Diego. At approximately 5:16 p.m., Santos arrived at the location in a white SUV. Santos then walked to Corrado's vehicle, and sat down in the passenger seat for approximately one minute. At approximately 5:17 p.m., Santos departed the location in his vehicle, and, at approximately 5:25 p.m., a marked San Diego Police Department unit conducted a traffic stop of Santos' vehicle. During the stop, officers seized $4700 in cash from Santos – this amount of money was consistent with the sale of a half pound of methamphetamine. A review of the serial numbers of the seized currency revealed that $2700 of the seized cash was the same money that the informant provided to Corrado approximately one hour earlier to purchase methamphetamine.

At approximately 5:42 p.m., Corrado, along with two other males, arrived at the informant's apartment. Corrado, the informant, and others proceeded to the kitchen of the apartment in order to divide up the methamphetamine brought by Corrado.

At approximately 6:35 p.m., the informant received a telephone call (which was recorded) in which the informant learned that the methamphetamine the two males had bought was 23 grams "short" – the quarter pound of methamphetamine was missing 23 grams. At approximately 6:46 p.m., one of the males returned to the informant's residence with a bag of methamphetamine in order to re-weigh and properly divide the methamphetamine. The informant provided the male with approximately 23 grams from the informant's portion of the methamphetamine, thus ensuring that the two males got a full quarter pound of the drugs. The informant and Corrado subsequently determined that Santos had "shorted" the informant by 3 grams of methamphetamine on the quarter pound purchased by the informant.

At approximately 7:10 p.m., the informant departed the residence and provided agents with the methamphetamine that he had received from Corrado – subsequent analysis revealed that the methamphetamine sold to the informant contained approximately 109.5 grams of methamphetamine with **45.7 grams of methamphetamine (actual)**. As noted above, the two males received at least the same amount of the methamphetamine during the deal.

SEALING REQUEST: Because this is an ongoing investigation and premature disclosure of the investigation and this affidavit could endanger agents and officers, cause suspects to flee, and cause the destruction of evidence, I request that this affidavit, all arrest warrants, the complaint, and all other associated court records be sealed until further court order.

_____
Asiano B. Davila, Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN to before me on June 4, 2008.

_____
HON. LEO S. PAPAS
UNITED STATES MAGISTRATE JUDGE

```
    ... by Order of
    rate Judge Leo S. ...
    _____
    . S. Papas
    . Magistrat
```

**SEALED by Order of Magistrate Judge Leo S. Papas**
Date JUN 4 2008

_____
Leo S. Papas
US Magistrate Judge

3